manatt
manatt | phelps | phillips

**Holly A. Roth**
Manatt, Phelps & Phillips, LLP
Direct Dial: (202) 585-6558
E-mail: hroth@manatt.com

April 10, 2012

**BY E-MAIL CRYSTAL.JOHNSON@GSAIG.GOV**

Ms. Crystal Johnson
Branch Chief
U.S. General Services Administration
Office of the Inspector General
Civil Enforcement Section (JIB-C)
1800 F Street, N.W., Room 5037
Washington, DC 20405

**Re: Subpoena Duces Tecum No. 1774 to Capitol Supply, Inc.**

Dear Ms. Johnson:

This letter responds to your email of April 3, 2012 regarding Capitol Supply, Inc.'s ("Capitol") production of documents in response to Subpoena Duces Tecum ("Subpoena") Nos. 1732 and 1774 from your office with respect to (i) all Fellows shredders; and (ii) all office products sold under Capitol's GSA Schedule Contract No. GS-02F-001N (the "Contract"), respectively.

First, with respect to your specific assertions regarding Subpoena No. 1732 and the documents Capitol produced in response to that subpoena, you assert that the GSA IG has determined that 15% of the sales provided were for noncompliant items. You have not provided us with the basis for your assertion and, as a result, we must dispute it. As demonstrated by the documents that Capitol produced, Capitol was explicitly advised by its vendor, D&H Sales, that the Fellows shredders with the part numbers FEL320005, FEL3216701 and FEL3219001 were manufactured in the United States. *See* email from J. Ritchey to L. White dated November 11, 2010, BATES No. CS004212. To the degree that any noncompliant products were in fact shipped by Capitol's vendors to any ordering activities, Capitol would be willing to accept a return of these products and issue a credit to the ordering activities

Second, you state that Capitol's response to Subpoena No. 1774 "has proven difficult to analyze and appears to be incomplete." As you are aware, Subpoena No. 1774 requested that Capitol produce documents relating to the Country of Origin for all of the products it sold to ordering activities over a period of 6 years. From 2004 through 2011, Capitol processed approximately 200,000 orders with nearly 35,000 line items. The sheer volume of orders processed by Capitol during this period results in the subpoena being extraordinarily broad and

manatt
manatt | phelps | phillips



burdensome. Moreover, the large majority of this information is already in the Government's possession. Approximately half of those orders were placed through GSAAdvantage. As a result, half of the information you are seeking may be obtained directly from the GSA. Approximately 25% of the orders placed with Capitol were placed through the DoD's EMall. Again these orders are within the control of the Government and could be obtained by your office.

Further, and as we discussed with respect to Subpoena No. 1732's requirement that Capitol produce specific sales data by product in electronic format, Capitol's software system is a custom developed system that uses a dynamic database. Even if the Section 6(a)(4) of the Inspector General Act of 1978, Public Law 95-452, as amended (5 U.S.C. App. 3) (the "Statute") required a recipient of an Inspector General ("IG") subpoena duces tecum to *create* electronic files to the IG's specifications, Capitol's software system would not be able to do so. In the first instance, Capitol's electronic system does not maintain all of the information you have requested for the fields you have requested for the time periods you have requested. As it is a dynamic system, Capitol's system is designed to verify a compliant country of origin from vendor provided information, e.g. the vendor feeds, in real time when Capitol accepts and fulfills an order. Since the vendors frequently update information on the products Capitol offers under the Contract, it is the most current information on the Country of Origin that is available on Capitol's system at any given time. The many modifications that Capitol has submitted to the Contract's Contracting Officer to remove noncompliant products demonstrates Capitol's efforts to comply with the Contract's Trade Agreements Act clause. These modifications to the Contract are also within the control of the GSA.

Given that Capitol is not required by law to create electronic files to the GSA IG's specification and, even if it were, it is unable to create the file requested, Capitol chose to provide the GSA IG with documentation that would contain the information the GSA IG is seeking. For example, on July 21, 2011, Capitol produced a DVD containing more than 22,000 documents comprised of purchase orders placed by ordering activities under the Contract. Your April 3, 2012 email's assertion that the DVD was bad and didn't work is not correct. The DVD worked properly, but the GSA IG lacked the technology to read the simple encryption program that Manatt placed on the DVD in order to protect sensitive information, including Government credit card numbers. Within a day of being informed that the GSA IG could not access the files, Manatt replaced that DVD with one that had a different encryption program. At that time, we then produced more than 50,000 additional purchase orders. You state in your email that these were not produced in Excel format. However, Capitol produced responsive sales information in the format in which Capitol maintains such information – the purchase order itself – in the ordinary course of business.

manatt
manatt | phelps | phillips



You also state that these purchase orders did not cover the full time period of the subpoena, from 2004 until 2011. However, as you will recall, I reached out to you multiple times after making this first production in order to discuss the scope of production. I specifically sought to determine whether it would be necessary to produce additional purchase orders, numbering in the hundreds of thousands. As it is, we produced more than 77,000 pages, and this covered only six months of the seven and one half years of information that the GSA IG is seeking. Providing all these documents would be significantly burdensome on Capitol. It would also be unnecessary, since these are Government purchase orders that should already be in the Government's possession. Nevertheless, neither you nor Aleksandra Doran responded to my phone messages and emails where we requested to discuss the scope of the subpoena with you.

On September 16, 2011, Capitol produced almost 1.5 million pages of the data feeds that Capitol had received from various vendors. This production contains country-of-origin data as provided to Capitol by its vendors. The original data feeds were originally in a variety of different forms, including Excel spreadsheets and .xml files. We produced them in the standard manner in .pdf form to permit the identification of these documents with Bates numbers. We are perplexed by your assertions that you could not access these documents and that we may have somehow stated that Mr. Ross was not reviewing the correct submission. Mr. Ross was clearly able to access and review these documents, since he sent us examples of these documents. In addition, from our review of these documents, we find it quite easy to identify the various pieces of information Subpoena No. 1774 is seeking, including the country of origin for each product. However, if the GSA IG would prefer to have this information in the native form as provided to Capitol, please advise and we will provide these native files to your office next week.

In addition to the more than 1.5 million pages that we have already produced, we are currently in the process of reviewing additional documents that may be responsive to Subpoena No. 1774. We have had a series of delays related to an outside vendor that we have had to retain to help with the document production. However, we anticipate that we will have additional responsive documents to produce in the near future.

Finally, with respect to your request to interview the owner of Capitol at Capitol's offices, we can find no provision in the Statute that gives the GSA IG, or any IG for that matter, such authority. Under Section 6(a)(4) of the Statute, your office has the authority to require, by subpoena, that Capitol to produce "information, documents, reports, answers, records, accounts, papers, and other data and documentary evidence." The plain language of the Statute does not give your office the authority to conduct site visits or demand interviews with employees of a company that is subject to your office's subpoena duces tecum. Although Capitol is certainly willing to cooperate with your office and provide such documentary evidence that it maintains to demonstrate its compliance with the Contract's Trade Agreements Act clause, we believe that

manatt
manatt | phelps | phillips



your request to "visit and meet with" Capitol's owner is not supported by law. Given this letter's responses to the issues raised in your April 3, 2012 email, we believe that your request to visit the Capitol Supply facility and meet with the owner is, at this time, unwarranted and premature. As a result, we respectfully decline to make the owner of Capitol available for an interview or to arrange for a site visit.

I am available to discuss the issues addressed in this letter at your convenience.

Sincerely,

Holly A. Roth

Encl.

cc: Michael Bhargava, Esq.