**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>v.<br><br>CAPITOL SUPPLY, INC.,<br><br>Respondent. | ) | Misc. No. 13mc0373 (BAH) |

**PETITIONER'S MOTION FOR SANCTIONS**

Pursuant to the inherent authority of this Court, Petitioner United States respectfully requests that this Court enter an order imposing sanctions upon Respondent Capitol Supply, Inc. (Respondent or Capitol Supply), including an award of attorney's fees and the issuance of an Order for Respondent to Show Cause why it should not be held in contempt for failing to obey the Court's Order compelling production of responsive documents to the General Service Administration's (GSA) Office of the Inspector General (OIG) subpoenas. Not only did Respondent fail to comply with the Order of this Court, it did everything this Court specifically ordered it to not do, and continued in the same stalling and obstructive misconduct that led to the issuance of this Court's Order.

In further support of this Motion, Petitioner states as follows:

**Points and Authorities**

1. Courts have the "inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). In this District, a party moving for a civil contempt finding must show "by clear and convincing evidence that: (1) there was a court order in place; (2) the order required certain conduct by the defendant; and (3)

the defendant failed to comply with that order." *International Painters & Allied Trades Industry Pension Fund v. ZAK Architectural Metal & Glass LLC*, 736 F.Supp.2d 35, 38 (D.D.C. 2010).

2. In proving the first and second prongs, the moving party must show that the Court's order requiring conduct by the respondent "was clear and unambiguous." *Armstrong v. Executive Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993).

3. In proving the third prong, the Court need not determine whether a non-party's failure to comply with the order was willful or intentional. *See S.E.C. v. Bilzerian*, 112 F. Supp. 2d 12, 16 (D.D.C. 2000) (finding that non-moving party's intent to comply with the court order was irrelevant). In *Walker v. Center for Food Safety*, 667 F.Supp.2d 133 (D.D.C. 2009), the District Court ordered a party to provide documents in response to a subpoena in a parallel *qui tam* action. *Id*. at 135. When the responding party failed to provide the document as ordered, the petitioner sought an order finding the responding party in civil contempt. *Id*. The responding party argued that a finding of contempt was not appropriate because the documents were withheld upon a claim of privilege, and thus the alleged violation of court's order was not "intentional." *Id*. The District Court, however, found that the claim of privilege was not raised at the initial motion to compel stage and was, therefore, waived. *Id*. at 138. Moreover, the court held that, because the purpose of civil contempt is remedial, it matters not with what the actor's intent was in failing to carry out the court's order. *Id*. at 136. *See also Food Lion, Inc. v. United Food and Commercial Workers Intern. Union*, AFL-CIO-CLC, 103 F.3d 1007, 1116 (D.C. Cir. 1997) (The "intent of the recalcitrant party is irrelevant" in a civil contempt proceeding). So long as the order was in place, the order was unambiguous, and the order was violated, the finding of contempt was proper. *Id.*

4. Attorney's fees may also be assessed for the disobedience of a court order, "as

part of the fine to be levied on the defendant." *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258 (1975). Like a finding of civil contempt, an award of attorney's fees may be imposed even "where a party's contempt is not willful." *Motley v. Yeldell*, 664 F. Supp. 557, 558 (D.D.C. 1987).

**The Court's Order Compelling Production is Unambiguous**

5. On April 16, 2013, Petitioner United States filed a Petition for summary enforcement of two subpoenas issued by the GSA OIG, which directed Respondent to produce records in connection with an OIG investigation of whether Respondent violated the False Claims Act. United States' Petition for Summary Enforcement of Inspector General Subpoena (U.S. Petition) at ECF No. 1.[1]

6. The petition was fully briefed by both parties. *See* ECF Nos. 8-15.

7. On March 18, 2014, the Court conducted a motions hearing and heard arguments by counsel for Petitioner and counsel for Respondent. ECF Minute Entry, March 18, 2014.

8. The Court granted the United States' Petition on March 19, 2014 and issued a Memorandum Opinion directing Respondent to comply with the U.S. Petition. Memorandum Opinion, March 19, 2014, ECF No. 16; Order, March 19, 2014, ECF No. 17.

9. The Court found that Capitol Supply's production of sales data was insufficient.

a. The Court held that Respondent's production in the form of PDF copies

---

[1] The subpoenas sought data regarding the sale of office products made by Capitol Supply through the GSA website pursuant to GSA Schedule Contracts. Memorandum Opinion at 4. The subpoenas sought Capitol Supply's internal records regarding the sales of the various products sold, Capitol Supply's records regarding the county of origin (COO) or each product sold, and the identity of each employee who sold the products. *Id*. Pursuant to the GSA Schedule Contract and the Federal Acquisition Regulations (FAR) governing the sales of products through GSA, the subpoena required that the data must be provided in a specified format that is "readable and usable" by the GSA OIG. S.A. Johnson Decl. at ¶ 15; 48 C.F.R. 4.703, *et seq.*

was compliant with neither the subpoena, the provision of the GSA Schedule Contract nor the FAR because the information was not provided in "a usable format as one that would allow for searches to identify and easily extract information subject to appropriate queries." Memorandum Opinion at 20. The Court directed Respondent to avoid PDF documents, and to produce the information "in a format that is reasonably usable, which includes searchable" in the databases or formats specified by the subpoena. *Id.* at 21.[2]

b. The Court further found that Capitol Supply's production of sales data was insufficient because Capitol Supply merely reproduced data from the GSA and the DOD websites, rather than produce records from its own files. Memorandum Opinion at 21-22. The Court recognized that the purpose of the OIG subpoenas was not merely to discern country of origin for the products sold by Capitol Supply on its government contracts, "but also to assess whether CSI was aware at the time of its FSS certification that products were manufactured in non-compliance with the BAA and TAA." *Id.* at 21. "[W]hatever sales documentation may be extant in the government's possession does not necessarily reflect what CSI precisely knew when." *Id*. at Memorandum Opinion at 21-22. Thus, the Court ordered that Capitol Supply provide sales data from its own files, and not that of the government, or else certify that it no longer keeps that data in violation of the supply contract and the FAR. *Id*. at 21.[3]

10. The Court found that Respondent's Production of Country of Origin (COO) Data was also insufficient.

---

[2] *See also*, Fed. R. Civ. P. 34(a)(1)(A) (a party my request that a responding party translate electronic data into a "reasonably usable form" when the electronic data is not stored in a directly obtainable medium).

[3] Additionally, because the sales data listed on the GSA and the Department of Defense EMALL websites only include a fraction of the total sales made by Respondent, the Court found that Respondent must provide its own records, and not that of any another entity, in order to completely fulfill its obligations under the Order. *Id*. at 22.

a. The Court recognized, and Capitol Supply did not dispute that the applicable FAR provisions specifically require that Capitol Supply (and any other vendor who contracts with GSA to sell products on the GSA website) "preserve all contemporaneous records received from its suppliers regarding the country of origin of its products . . . for three years from the date of the last payment under the contract," "maintain its records so as to allow the production and/or conversion of those records and other electronic data to a readable and usable form for the GSA," and "shall not destroy, discard, delete, or **write over"** the required information." *Id.* at 15-16 (citing 48 C.F.R. § 4.703) (emphasis in original).

b. The Court found that, despite this requirement, Capitol Supply failed to produce the "information required to be retained under its contractual obligations with the government" and found that Capitol Supply's proffered reasons for its failure (that it regularly over-writes the required records in its computer files) "is not so easily excused." *Id*. 17-18.

c. Accordingly, the Court ordered Respondent to produce the Respondent to produce all COO data that is contemporaneous with the actual sale of the corresponding product, or else certify to the GSA OIG what specific contemporaneous COO data it no longer has as a result of its record-keeping practices. *Id*. at 18.

11. The Court found Respondent's production of Department of Defense (DOD) sales data was insufficient.

a. The Court found that Respondent's production of DOD sales data was insufficient because Respondent produced information from DOD sources instead of Capitol Supply's own files. *Id*. at 22.

b. The Court further found that the Respondent's production of the DOD sales data with password protection, and Respondent's failure to provide the GSA with the password necessary to access the DOD sales data was unacceptable, and the Court directed Respondent to "provide any passwords to encrypted documents that CSI has not yet provided to the OIG in response to these subpoenas." *Id*. at 21 n. 12.

**Respondent's Violations of the Court Order**

12. Subsequent to the issuance of the Court's order compelling production, Capitol Supply provided the United States with three separate memory drives allegedly containing documents and other data ordered by the Court. However, Capitol Supply did everything that the Court directly ordered it not to do.

a. After this Court ordered Capitol Supply to provide sales data from its own files and not from the GSA (or the DOD) website, Capitol Supply once again produced the sales data from the GSA website (instead of from Capitol Supply's own file). Exh. 5 (E-mail exchange between counsel for the United States and counsel for Capitol Supply, dated June 26, 2014 to June 27, 2014) and Exh. 6 (E-mail from counsel for the United States to counsel for Capitol Supply, dated July 1, 2014).

b. Despite the Court's direct and unambiguous instruction to avoid the PDF format, Capitol Supply provided the "sales data" in PDF format, instead of the usable format required by the FAR and the GSA OIG subpoena. *Id*.

c. In violation of the Court Order's order to either produce the contemporary COO data or "certify" what relevant and responsive COO files it no longer has as a result of its document retention practices, Respondent failed to either. *Id*. When asked about the missing COO data or certification, Capitol Supply, through counsel, merely responded that it has

"already produced all the COO information that [they] were able to find after a diligent search." Exh. 5. No certification was provided.

d. Despite the Court's mandate that Capitol Supply produce the DOD sales data from its own records and that it provide the United States with all passwords for the encrypted files, Capitol Supply provide only sales data from the DOD EMALL website, and withheld the passwords or encryption keys necessary to access the data. Exhs. 5 and 6. These conditions not only violate the Court's Order, but Capitol Supply's insistence upon a "protective order" prior to allowing the OIG access to the files is unavailing because Capitol Supply does not sell national security equipment to DOD, nor is its sales of off-the-shelf office products a matter of national security.

**<u>Respondent's Continued Stalling and Obstructive Tactics</u>**

13. During the Motions Hearing in this matter, the Court noted that much of Capitol Supply's conduct in response to the OIG subpoena amounted to an attempt to "stall" the actual production in order to "avoid having to certify that they did not have the records that they were supposed to be retaining." Transcript of Motions Hearing (March 18, 2014) at 38.

14. Capitol Supply's failure to comply with the Court Order and the OIG subpoena in this matter is a continuation of that conduct directed at delaying production and certification and obstructing the investigation by the OIG.

a. Among the items produced by Capitol Supply is an Excel spreadsheet that contains unusable links to external documents that cannot be accessed by the United States. Exh. 7 (e-mail exchange between counsel for the United States and counsel for Capitol Supply from

June 20, 2014 to June 23, 2014) at June 19, 2014 at 5:06 pm.[4]

b. When the United States requested instruction on how to access the linked documents, Respondent responded that the spreadsheet and the linked documents needed to be imported into a "review platform" to work. *Id.* at June 19, 2014 at 5:44 pm.

c. When asked to identify which files needed to be imported in a "review platform" and where those files could be located in the production, Capitol Supply failed to respond until three (3) days later, when it gave the same non-answer as before – that the files needed to be "imported into a review platform." *Id*. at June 20, 2014 at 8:37 am, and at June 23, 2014 at 2:39 pm.

d. Incredibly, after the United States followed up on this missing data, counsel for Respondent claimed to not know which spreadsheet the United States was referring to despite having previously directed to the very USB drive that it came from, *see* Exh. 7 at June 19, 2014 5:06 pm, and after having previously given advice to the United States that the documents from the spreadsheet need to be on the same "review platform." *Id*., and Exh. 8 (E-mail exchange between counsel for the United States and counsel for Capitol Supply from July 1, 2014 to July 2, 2014). Respondent also refused to provide any instructions regarding the spreadsheet in writing. *Id*.

e. By employing these stalling and time-consuming measures, Respondent continues to frustrate the GSA OIG's investigation by producing unreadable and unusable material.

---

[4] Despite having sufficient space on its larger hard-drive to include all of the related material, Respondent did not provide the related material in the same hard-drive in which their links appear. *Id*.

## **Conclusion**

WHEREFORE, for all of the foregoing reasons, as well as those set forth in the Petition for Summary Enforcement and this Court's Order compelling summary enforcement, the United States requests that the Court grant sanctions against Respondent and issue an Order for Respondent to Show Cause why Respondent should not be held in civil contempt for failing to provide documents and data as ordered by the Court. Petitioner also requests an award of attorney's fees to the United States.

Pursuant to Local Civil Rule 7(m), counsel for the United States contacted counsel for Respondent on July 1, 2014 and again on July 15, 2014, to inform Capitol Supply that Petitioner will seek appropriate sanctions from this Court. Counsel for Capitol Supply has informed the United States that it opposes this motion and the sanctions sought.

Respectfully submitted,

RONALD C. MACHEN JR., D.C. Bar # 447889
United States Attorney

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division

*/s/ Darrell C. Valdez* .
By: DARRELL C. VALDEZ, D.C. Bar # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C. 20530
(202) 252-2507