# *EXHIBIT "7"*

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

Misc. No. 1:13-mc-00373 (BAH)

Petitioner,

v.

CAPITOL SUPPLY, INC.,

Respondent.

______________________________/

**DECLARATION OF MICAHEL BHARGAVA IN SUPPORT OF DEFENDANT CAPITOL SUPPLY, INC.'S RESPONSE OPPOSING PETITIONER'S MOTION FOR SANCTIONS**

Michael Bhargava declares, pursuant to 28 U.S.C. § 1746:

1. I am a member of the bar of this Court and a member of the law firm of Chadbourne & Parke LLP, counsel for Respondent Capitol Supply, Inc.

2. I submit this Declaration in support of Defendant Capitol Supply Inc.'s Response Opposing Petitioner's Motion for Sanctions.

3. In June 2014, Capitol made three productions of documents to the Government consisting of approximately 350,000 pages of documents. These documents consisted largely of searchable documents in .pdf and .edi format.

4. Each of the productions, which were provided to the Government on external hard drives, contained a "load file," which contains the metadata associated with each document being produced. The load file contains the Bates number or identification number for each document, followed by the associated metadata fields. Load files can also contain links to the native files.

5. The production of load files is the standard practice for document productions in any litigation so that the receiving party can load the files into a review database of its choosing.

Anyone with any experience with electronic document production would be expected to understand what load files are and how they function.

6. Because Capitol did not know which platform the Government intended to use for its review, Capitol produced several different load formats for the Government's convenience. Again, this is standard practice in the production of documents in litigation. The load files were produced to the Government in a comma-separated values (.csv) format, which is also standard practice in the industry.

7. On June 19, 2014, Assistant U.S. Attorney Darrell Valdez, counsel for the Government, sent me an email stating that "there is a link in the spreadsheet" in Capitol's production that the Government could not access, and he requested assistance with the file. The question was confusing, since Capitol had not produced *any* spreadsheets as part of its production, and Mr. Valdez did not supply the "spreadsheet" in question. (Documents in .csv format are not spreadsheets, such as Excel spreadsheets, but instead are essentially text files with data separated by commas or tabs. The information in .csv files, however, can be uploaded into spreadsheets and reviewed there.) Nevertheless, because of the reference to the "link," Chadbourne & Parke's litigation support professional and I assumed that Mr. Valdez was referring to the load file.

8. I responded to Mr. Valdez and informed him that he was likely referring to "the actual load file for the volume" and that the links were "pointing to the images, text, or native [files]." Although this should have been obvious to anyone who has engaged in document production, I informed Mr. Valdez that "[t]his file needs to be imported into a review platform to work."

9. Furthermore, since the production was assembled by Chadbourne & Parke's litigation support staff, I offered to connect them with the Government's technical staff so that they could resolve any issues with the load files. Mr. Valdez did not respond to this offer.

10. Instead, Mr. Valdez sent a follow up email asking "which files need to be imported into a review platform and where those files are in the production." The next business day, a Monday, I responded to Mr. Valdez by stating that "[i]f you have additional questions about the production itself, it's probably best to connect our IT folks directly. Please let me know if you want to do that." Mr. Valdez never responded to this offer, and no one from the Government ever contacted Chadbourne & Parke's litigation support professionals.

11. On July 1, 2014, Mr. Valdez emailed me again regarding the load file. The email appeared to be a rough draft of the motion for sanctions that Mr. Valdez was writing. His email claimed that Capitol's production of the load file – which he incorrectly referred to as a "spreadsheet without the relevant 'linked' documents" – was an example of Capitol's "manipulat[ion] . . . of information to make it unreadable and unusable by the GSA OIG" and that Capitol "then attempted to place the blame upon the GSA OIG for its inability to read the information you alleged was provided."

12. On July 2, 2014, I responded to Mr. Valdez by stating that "with regard to your complaint regarding the spreadsheet(s) with internal links, please provide us with the Bates numbers or copies of those documents. We are still unclear as to what this issue is. In your initial email, you referred to some 'documents [with] inactive links,' and in your email below, you refer to a single spreadsheet with links that do not work. We have tried to resolve this issue with you by providing you with the contact information for our tech person here who handled the

production, but you chose not to contact her. I do not know what spreadsheet(s) you are referring to, so please let us know, and we will try to resolve this issue."

13. Again, the Government did not accept Capitol's offer to assist with the load file. Instead, Mr. Valdez quickly responded by informing Capitol that he would file a motion for sanctions against Capitol. Although Mr. Valdez claimed that he was attaching the "spreadsheet" to his email, he did not do so.

14. Mr. Valdez did not provide Chadbourne with the document in question until July 7, 2014. However, it was not in the same form as it was produced to the Government. Although Chadbourne produced the file as a .csv file, the Government returned it in the form of an Excel spreadsheet. It appears that the Government inadvertently opened the .csv file produced by Capitol and saved it as an Excel spreadsheet. Furthermore, in its attempts to manipulate the document, the Government added a new worksheet to the document that was not present in Capitol's production. It appeared that the individual who manipulated the document had no experience with such load files, despite the fact that they are standard in any electronic document production.

15. True and correct copies of the email exchanges between me and Mr. Valdez are attached to Capitol's Response in Opposition to the Motion for Sanctions as Exhibits 8 and 9.

Dated: July 24, 2014

Washington, DC

/s/_*Michael Bhargava*__________
Michael Bhargava
Counsel for Capitol Supply, Inc.